UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
DIANA TOUSSAINT and TRICIA GRINNELL,

                               Plaintiff,                                       Docket No.:

            -against-                                          **COMPLAINT**

ALZA ENTERPRISES LLC d/b/a SUPERCUTS, and
LIZA LUK,                                           Jury Trial Demanded

                                Defendants.
--------------------------------------------------------------------X

        Plaintiffs, Diana Toussaint ("Toussaint") and Tricia Grinnell ("Grinnell"), by and through

their counsel, the Law Office of Peter A. Romero PLLC, complaining of the Defendants, Alza

Enterprises LLC ("Alza:"), and Liza Luk ("Luk"), alleges as follows:

## NATURE OF THE CLAIM

        1.     Plaintiffs bring this action to recover damages for retaliation in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"), 42 U.S.C.

§ 1981 ("Section 1981"), and the New York State Human Rights Law, New York Executive Law

§ 290 *et seq.* ("NYSHRL"), as well as to recover damages for subjecting Plaintiffs to an egregious

hostile work environment on the basis of their race, in violation of the NYSHRL.  Plaintiffs further

bring this action to recover damages pursuant to New York Labor Law § 198 for violation of the

("NYLL"), and any other claim(s) that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

        2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and

supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

        3.     Venue is proper in this United States District Court pursuant to 28 U.S.C. §

1391(b)(1) as the Defendants reside within the Eastern District of New York, and 28 U.S.C. §

1

1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of New York.

4.      Plaintiffs Toussaint and Grinnell timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation in violation of the Title VII and Section 1981 under Charge Numbers: 520-2021-03081 and 520-2021-03125 respectively.  Plaintiffs commenced this action within ninety days of the EEOC issuing its Notices of Right to Sue.

## THE PARTIES

5.      At all times relevant, Plaintiff Toussaint is and was a resident of the County of Suffolk, State of New York.

6.      At all times relevant, Plaintiff Toussaint was Black, African American, and a person and employee within the meaning of Title VII, Section 1981, the NYSHRL, and the NYLL.

7.      At all times relevant, Plaintiff Grinnell is and was a resident of the County of Suffolk, State of New York.

8.      At all times relevant, Plaintiff Grinnell was Black, African American, and a person and employee within the meaning of Title VII, Section 1981, the NYSHRL, and the NYLL.

9.      At all times relevant, Defendant Alza is and was a limited liability company with multiple franchise locations, including 106 Route 109, West Babylon, New York 11704; 56 Sunrise Highway, Lindenhurst, New York, 11757; and a principal place of business located at 581 East Main Street, West Bay Shore, New York 11706.

10.      At all times relevant herein, Defendant Alza employed more than fifteen employees.

11.     At all times relevant, Defendant Alza was and is an "employer" within the meaning of Title VII, Section 1981, the NYSHRL, and the NYLL.

12.     At all times relevant herein, Defendant Luk employed more than fifteen employees.

13.     At all times relevant, Defendant Luk was and is an "employer" within the meaning of Title VII, Section 1981, the NYSHRL, and the NYLL.

**FACTS**

14.     Defendant Alza is a franchise barber shop that provides styling and grooming services at several locations within Suffolk County.  Defendant Luk is the owner and day-to-day overseer of of Defendant Alza.

15.     Plaintiff Toussaint commenced her employment with Defendants as an hourly paid Stylist and manual worker on or about July 5, 2019.   Plaintiff Grinnell commenced her employment with Defendants as an hourly paid Stylist and manual worker in or around 2001. Plaintiffs were employed at Defendants' 581 East Main Street, West Bay Shore, New York location.

16.     Throughout their respective employments, Plaintiffs provided haircut and styling services to Defendants' customers, and at least 25% of their duties each week consisted of manual work, including cleaning and sweeping the shop, laundry, washing and folding towels, and standing for significant periods of time.

17.     Defendants paid Plaintiffs their earned wages on a bi-weekly or semi-monthly basis.

18.     Throughout their respective employments, Plaintiffs' work performances were consistently satisfactory, and Plaintiffs were qualified for their positions.

19.     On May 1, 2021, Plaintiff Toussaint was working for Defendants with shift manager Rita Harris ("Harris"), who is white.  During a conversation with a customer, Harris was talking about Arnold Schwarzeneggar, and deliberately pronounced his name as "Schwarze-Nigger."

20.     Plaintiff Toussaint politely informed Harris what any decent human being should already be aware of: that the use of the "N-word" is not only abhorrent, offensive, and vile, but hurtful and dehumanizing to the African American community in particular.

21.     Harris smiled at Plaintiff Toussaint and proceeded to deliberately repeat "Schwarze-Nigger," with emphasis on the second half of the word, at least three more times directly to Plaintiff Toussaint, while maintaining her smile.  Plaintiff Toussaint felt dehumanized and deeply upset by this toxic interaction.

22.     Later that night, Plaintiff Toussaint complained about this racist and harassing behavior to Defendants' owners and management in a group text message chain.  Upon learning the details of what transpired, Plaintiff Grinnell, who also felt offended and deeply hurt by Harris's use of the "N-word", and who is a part of the same text message chain, also complained to Defendants' owners and management about this blatantly racist act.

23.     Plaintiff Grinnell further complained that many of the white stylists refuse to service black customers, instead steering them all to Plaintiffs, and outright refusing to style black hair.  Plaintiffs asked that the Defendants take action to remedy this matter.

24.     Defendants failed to take any action against Harris, or to address any of Plaintiffs' concerns about racial discrimination.  Plaintiffs felt defeated and feared they would continue to suffer such racial indignities at the hands of Harris given Defendants' refusal to act.

25.     As feared, on May 3, 2021, the Defendants issued Plaintiff Toussaint a write-up for *insubordination*, a cartoonishly villainous and plainly retaliatory response to Toussaint's complaint.

26.     A few days later, on May 16, 2021, the Defendants issued Plaintiff Grinnell a write-up for insubordination, continuing their racially motivated retaliation against their only two black stylists.

27.     The retaliatory write-ups received by Plaintiffs caused them to fear that they would be subject to further reprisals by Defendants, up to and including the termination of their employment, which placed them in apprehension of losing their jobs and suffering acute financial instability.

28.     Plaintiffs were constructively terminated by Defendants, as they could not tolerate Defendants' practice of coddling bigots and punishing Plaintiffs for opposing discrimination.

29.     Based on the foregoing, Defendants subjected Plaintiffs to retaliation for engaging in protected activity, in violation of Title VII, Section 1981, and the NYSHRL, as well as a hostile work environment based on race, in violation of the NYSHRL.

30.     As a result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer damages for monetary and/or economic harm, loss of past and future income and employment-related benefits, emotional pain and suffering, mental anguish, embarrassment and humiliation, as well as attorney's fees, costs and interest as permitted by law.

31.     Defendants failed to pay Plaintiffs "on a weekly basis and not later than seven calendar days after the end of the week in which the wages are earned." Instead, Defendants paid Plaintiffs on a bi-weekly basis pursuant to their payroll policy in violation of New York Labor Law § 191.

32.     Plaintiffs suffered an underpayment of wages each pay period because Defendants failed to pay their wages on a weekly basis and not later than seven calendar days after the end of the week in which the wages were earned, as required by NYLL § 191.

33.     Plaintiffs are manual workers who depend upon their wages for sustenance and suffer harm that is particularly acute when their wages are delayed, and they are temporarily deprived of their earned wages.

34.     Each time that Plaintiffs received late compensation for the work that they performed, Defendants effectually underpaid them for such work.

35.     By way of example, these delayed wages prevented Plaintiffs from spending money earned on a host of everyday expenses and to provide for their basic needs including, but not limited to, purchasing food and groceries, rent or mortgage payments, gas or heating oil, utilities, medical supplies and services, insurance, automobile payments, fuel for vehicles, education tuition and expenses, daycare or childcare, public transportation, and other basic living expenses.

36.     By Defendants' failure to pay Plaintiffs their wages earned within seven days of the end of their workweeks and retaining money that belonged to them, Plaintiffs lost the time value of money.

37.     Additionally, Defendants' delayed payment of wages forced Plaintiffs to forgo purchasing goods and services until a later time after their receipt of their late paid wages.  Because of inflation, being an ever-increasing scourge throughout the Covid-19 pandemic and recent events, Plaintiffs were required to pay increased prices for the goods and services that they otherwise would have purchased at an earlier date were their wages lawfully paid on a weekly basis.

38.     By retaining these wages earned beyond the timeframes set by NYLL § 191, Defendants benefitted from the time value of money and their free use of such funds, at the expense of Plaintiffs.  For example, during the interval of these delayed wage payments, Defendants were free to utilize those funds to purchase goods and services, pay rent or mortgages on its facilities and retail stores, pay installment payments, and pay for marketing and other business expenses.

### FIRST CLAIM FOR RELIEF
### (RETALIATION – TITLE VII)

39.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

40.     Based on the foregoing, Defendants retaliated against Plaintiffs because of their protected activity, in violation of Title VII.

41.     As a proximate result of Defendants' retaliation, Plaintiffs have suffered and continue to suffer loss of past and future earnings and employment-related benefits, harm to their professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

42.     Defendants retaliated against Plaintiffs by engaging in willful, wanton, and/or reckless conduct and/or in conscious disregard of Plaintiffs' rights and Plaintiffs are therefore entitled to an award of punitive damages as against Defendants under Title VII.

### SECOND CLAIM FOR RELIEF
### (RETALIATION – SECTION 1981)

43.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

44.     Based on the foregoing, Defendants retaliated against Plaintiffs because of their protected activity, in violation of Section 1981.

45.     As a proximate result of Defendants' retaliation, Plaintiffs have suffered and continue to suffer loss of past and future earnings and employment-related benefits, harm to their professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

46.     Defendants retaliated against Plaintiffs by engaging in willful, wanton, and/or reckless conduct and/or in conscious disregard of Plaintiffs' rights and Plaintiffs are therefore entitled to an award of punitive damages as against Defendants under the Section 1981.

### THIRD CLAIM FOR RELIEF
### (RETALIATION – NYSHRL)

47.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

48.     Based on the foregoing, Defendants retaliated against Plaintiffs because of their protected activity, in violation of the NYSHRL.

49.     As a proximate result of Defendants' retaliation, Plaintiffs have suffered and continue to suffer loss of past and future earnings and employment-related benefits, harm to their professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

50.     Defendants retaliated against Plaintiffs by engaging in willful, wanton, and/or reckless conduct and/or in conscious disregard of Plaintiffs' rights and Plaintiffs are therefore entitled to an award of punitive damages as against Defendants under the NYSHRL.

### FOURTH CLAIM FOR RELIEF
### (HOSTILE WORK ENVIRONMENT RACE DISCRIMINATION – NYSHRL)

51.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

52.     Plaintiffs have been discriminated against and subjected to a hostile work environment by the Defendants on the basis of their race in violation of the NYSHRL.

53.     The harassment of Plaintiffs was such that it subjected Plaintiffs to inferior conditions of their employment, such that non-African American employees did not have to fear racist and demeaning language being used against them.

54.     The harassment to which Plaintiffs were subjected was such that a reasonable employee would find the conditions of their employment altered for the worse.

55.     As a proximate result of the racial discrimination, Plaintiffs have suffered and continue to suffer mental and emotional distress, pain and suffering, embarrassment and humiliation and mental anguish.

### FIFTH CLAIM FOR RELIEF
### (FREQUENCY OF PAY VIOLATION – NYLL)

56.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

57.     Plaintiffs are manual workers as defined by the NYLL.

58.     Defendants were required to pay the Plaintiffs on a weekly basis, and no later than seven days after the end of the workweek in which the wages were earned.

59.     Defendants failed to pay Plaintiffs on a weekly basis and instead paid Plaintiffs bi-weekly or semi-monthly in violation of Labor Law §191.

60.     Plaintiffs are entitled to damages equal to the total of the delayed wages and reasonable attorney's fees and costs.

### DEMAND FOR JURY TRIAL

61.     Plaintiffs demand a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the following relief:

a)  An order restraining Defendants from any further retaliation against Plaintiffs for participation in any form in this litigation;

b)  Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under Title VII, Section 1981, and the NYSHRL;

c)  Awarding damages for, *inter alia*, compensatory damages for back pay, front pay, all benefits to which Plaintiffs would have been entitled to receive but for Defendants' unlawful conduct, damages for emotional distress, pain and suffering, and other incidental and consequential damages;

d)  Punitive damages as permitted by law;

e)  Statutory damages pursuant to New York Labor Law §198;

f)  Pre- and post-judgment interest as permitted by law;

g)  All attorneys' fees incurred in prosecuting these claims;

h)  All costs incurred in prosecuting these claims; and

i)  Such other and further relief as this Court deems just and proper.

Dated:  Hauppauge, New York
        October 21, 2022

                            LAW OFFICE OF PETER A. ROMERO PLLC
                            *Attorneys for Plaintiff*
                            490 Wheeler Road, Suite 250
                            Hauppauge, New York 11788
                            Tel.: (631) 257-5588


            By:     _____
                            MATTHEW J. FARNWORTH, ESQ.
                            PETER A. ROMERO, ESQ.